**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT BOWLING GREEN**

**CARLOS EDDIE HOLT**
    Plaintiff

**v.**                                                                                                                        **No. 1:06CV-00058-J**

**JO ANNE B. BARNHART**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by M. Gail Wilson. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 9 and 10, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on June 20, 2005, by administrative law judge (ALJ) Ronald Kayser. In support of his decision denying Title II and Title XVI benefits, Judge Kayser entered the following numbered findings:

    1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

    2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    3. The claimant's back pain is considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

    4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

   5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

   6. The claimant has the following residual functional capacity: lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk 6 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; occasionally stoop or climb ropes, scaffolds and ladders. There are no limits on his ability to push/pull or frequently climb ramps and stairs.

   7. The claimant's past relevant work as lead foreman/part owner of a gate manufacturing business did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

   8. The claimant's medically determinable severe back pain does not prevent the claimant from performing his past relevant work. In the alternative, the claimant could perform work as a forklift operator or welder.

   9. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Administrative Record (AR), p. 24).

## Governing Legal Standards

   1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the

Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all

vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

## Discussion

The plaintiff's past relevant work was that of a lead foreman / part owner of a farm gate manufacturing business. Like most work, the plaintiff had a number of separable job duties, which required differing degrees of exertional and skill capacities. At the administrative hearing, the vocational expert (VE), Betty Hale, identified component job duties consisting of supervisor ("based on the DOT [i.e., Dictionary of Occupational Titles] ... light ... based on his testimony ... medium to heavy," SVP [i.e., specific vocational preparation number] 7), forklift operator ("medium"), and welding ("light to medium") (AR, pp. 383-384). The VE testified that 6,200 and 434,000 "light" supervisor jobs exist in the state and national economies, respectively (AR, p. 384). The hearing was terminated pending submission of additional medical evidence by the plaintiff's counsel (AR, pp. 384-385). No vocational hypothetical was presented.

This case was denied at the fourth and, alternatively, at the fifth and final steps of the sequential evaluation process. The ALJ adopted the assessment of the plaintiff's physical capacities given by the state agency program physician, John Rawlings. Compare ALJ's Finding No. 6 (AR, p. 24) and Dr. Rawlings' Physical Residual Functional Capacity Assessment (AR, pp. 146-151). The Assessment falls within the general parameters of "medium" work as contemplated by 20 C.F.R. §§ 404.1567(c) and 416.967(c). However, in light of his finding that the plaintiff can only occasionally stoop, Dr. Rawlings characterized his assessment as a whole as being "reduced to light by stooping limitation but should still be able to return to past work" (AR, p. 152).

**The ALJ's Fourth-Step Findings**

First, we consider whether a fourth-step denial decision is supported by substantial evidence. In cases in which the claimant's past relevant work consisted of a number of separable job duties, it has been recognized that:

> [E]very occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify ... work according to the least demanding function of ... occupations is contrary to the letter and spirit of the Social Security Act.

*Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir., 1985). Hence:

> [I]n order to conclude that a claimant can perform ... work, the ALJ must find that she is capable of performing all of the duties of that job . . . even where [a] job combined the duties of occupations that also exist separately in the national economy.

*Berthiaume v. Commissioner*, 1999 WL 814267 (D.N.H.). The Sixth Circuit has recognized the foregoing principles, holding that the Commissioner "may not consider only the least physically taxing elements of the claimant's former employment when characterizing the exertional level of that previous work." *Williams v. Secretary*, 1986 WL 16173, citing *Valencia*, supra.

In his application for benefits, the plaintiff alleges, as his primary basis for disability, that his "scoliosis, back pain, hips out of alignment, neck not on shoulders" renders him unable to "bend, ... walk long distances, [and] sit long periods" (AR, p. 70). On February 15, 2005, the plaintiff's treating physician, Richard Miles, opined as follows (AR, p. 165):

> [The plaintiff is] unable to tie his shoes. He can't bend down to pick things up. He's unable to squat, bend, stoop or crawl. ... He has very limited lateral bending motion and also very limited forward or backward bending motion due to the severe pain.

Consistent with the foregoing, the ALJ found that the plaintiff can only "occasionally stoop." Finding No. 6. In light of the legal principles discussed in the preceding paragraph, in order to conclude that the plaintiff can perform his past relevant work, substantial evidence must support a

conclusion that the plaintiff retains the ability to perform his most physically demanding job duties (i.e., welder and forklift operator), and not merely his least physically demanding responsibilities (i.e., supervisor). The magistrate judge concludes that there is a lack of evidence that an ability to only occasionally stoop is compatible with continuation of the plaintiff's welding and forklift operator duties. Furthermore, although the VE failed to identify the DOT code numbers of the positions she had in mind, by its very nature, welding, which was a significant component of the plaintiff's past work, appears to involve more than occasional stooping. This intuition is supported by the DOT, which indicates that job no. 819.381-010 ("welder-assembler") requires "frequent stooping from 1/3 to 2/3 of the time." Therefore, the ALJ's fourth-step denial is not supported by substantial evidence.

### The ALJ's Fifth-Step Findings

Next, we consider whether a fifth-step denial decision is supported by substantial evidence. At the fifth and final step of the sequential evaluation process, the burden of going forward with evidence of nondisability shifts to the Commissioner. See *Foster v. Commissioner*, 279 F.3d 348 (6th Cir., 2001). If at least one nonexertional impairment is present, this burden is satisfied by presentation of hypothetical questions to a vocational expert (VE). See *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

The ALJ found that "[i]n the alternative, the claimant could perform work as a forklift operator or welder." ALJ's Finding No. 8. The magistrate judge concludes that this fifth-step finding is not supported by substantial evidence because, for the reasons already identified, there is a lack of evidence that an ability to only occasionally stoop is compatible with the job requirements of forklift operator and welder. Furthermore, there is a lack of evidence in support of a fifth-step

denial because, as we shall see below, nonexertional impairments appear to be present, yet no vocational hypotheticals were presented at the hearing. The plaintiff's third numbered contention has merit, to-wit, "the ALJ failed to utilize a vocational expert concerning the impact Eddie's restrictions and limitations would have on his ability to do work related activities" (Docket Entry No. 9, p. 8). Therefore, at a minimum, a remand is required herein for the taking supplemental vocational testimony and for a new decision. The plaintiff's remaining contentions shall be considered but in a different order than presented by the plaintiff.

### The Plaintiff's Physical Impairments: Listing 1.04A

The plaintiff's fourth numbered contention is that "the ALJ erred in failing to find that Eddie meets and/or equals the criteria of Listing 1.04A" (Docket Entry No. 9, p. 9). The Listing provides that the following medical condition is per-se disabling:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

On February 24, 2005, the plaintiff's treating physician, Richard Miles, completed a special form that was copyrighted by David A. Morton III, M.D. (Form 1.04) (2003) (AR, pp. 154-165). Dr. Morton is well-known in Social Security disability circles as the author of Medical Proof of Social Security Disability, a treatise routinely consulted by the undersigned. The form is well designed to cover all of the medical bases that are pertinent to a determination of whether Listing 1.04 is satisfied in a given case. Having examined Dr. Miles' completion of the

form, it is not apparent to the undersigned why Dr. Miles' answers, if entitled to controlling weight, would not mandate a conclusion that the Listing was satisfied. The magistrate judge concludes that the ALJ's decision is deficient in that it fails even to mention Listing 1.04 and fails to analyze which, if any, portions of the Listing are not adequately covered by Dr. Miles' findings and responses and which, if any, of said findings are not entitled to controlling weight. Therefore, at a minimum, a remand is required for a new decision addressing these matters. It does not appear, however, that this court has the authority to find, in the first instance, that the Listing is satisfied. See 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2) ("Although we consider opinions from medical sources on issues such as ... whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, .... the final responsibility for deciding these issues is reserved to the Commissioner").

### The Plaintiff's Physical Impairments: Residual Functional Capacity

The plaintiff's first numbered contention is that "the ALJ failed to properly assess the functional limitations of Eddie and did not give appropriate weight to his treating physician, Richard Miles, M.D." (Docket Entry No. 9, p. 3). On April 6, 2004, Dr. Miles opined that the plaintiff "can't crawl, stoop, or bend [and] can't lift twenty pounds at any one time" (Exhibit 1F) (AR, p. 125). On February 15, 2005, Dr. Miles stated, in conclusory terms, that the plaintiff is "unable to do any job ... due to the severity of his low back pain. I'm not sure at this pont in time that surgery would help" (AR, p. 166). On February 24, 2005, Dr. Miles opined that the plaintiff's maximum standing/walking capacity is less than six to eight hours daily on a long term basis and

his maximum lifting capacity is less than ten pounds occasionally (Exhibit 6F) (AR, p. 161). The specific limitations assigned by Dr. Miles far exceed those acknowledged by the ALJ in Finding No. 6.

A treating source's medical opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R §§ 404.1527(d)(2) and 416.927(d)(2). The ALJ rejected Dr. Miles' medical opinions for the following reasons (AR, p. 22):

> In so finding [that the plaintiff is restricted as noted in Finding No. 6], the undersigned took into account Dr. Miles' opinion that the claimant has been disabled due to chronic back pain and his recommendation of surgery (Exhibit 1F and 6F). A "disabled" opinion is a finding of act reserved to the Commissioner (Social Security Ruling 96-5p). Although Dr. Miles is the claimant's treating physician, he has not provided laboratory or clinical findings to support his medical assessments. Furthermore, his conclusion is inconsistent with other substantial evidence in the record. On February 21, 2005, a lumbar spine x-ray was interpreted as appearing normal with no evidence of scoliosis (Exhibit 6F).

The magistrate judge concludes that the ALJ did not err in rejecting Dr. Miles' opinion of disability, which is a vocational-legal conclusion that is "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1). Nevertheless, contrary to the ALJ's suggestion, Dr. Miles did not base his assignment of specific restrictions solely upon a finding of scoliosis. On the contrary, Dr. Miles stated that his findings were based, in part, upon the following (AR, p. 156):

> [Lumbar MRI on] 6/10/01 [revealed] marked L5-S1 degenerative disc changes with associated bilateral foraminal and lateral recess stenosis. The disc protrusion abuts the S1 nerve rootlets within the lateral recesses.

The lumbar MRI to which Dr. Miles referred is at AR, pp. 176-177. The ALJ apparently did not mention this MRI in his written decision. The record also contains a cervical MRI, also not

10

mentioned by the ALJ, which further tends to support the limitations assigned by Dr. Miles. The cervical MRI revealed the presence of the following (AR, p. 234):

> 1. Moderate broad based disc protrusion at C6-C7 that is indenting the cord and narrowing both neural foramina associated with a central canal stenosis.
>
> 2. Smaller disc displacement or protrusion at C5-C6 that is midline and to the left but also indenting the cord and narrowing the left neural foramen at this level.

In light of the MRI evidence in the record that was not analyzed in the ALJ's decision, which tended to support Dr. Miles' assigned restrictions, the magistrate judge concludes that ALJ's decision failed to identify "good reasons" as contemplated by sections 404.1527(d)(2) and 416.927(d)(2) for declining to give said restrictions controlling weight. An ALJ's failure to identify "good reason" in his written decision for rejecting the treating physician's opinion is a reversible error even if the court could, based upon an independent review of the record, discover such reasons. See *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir., 2004). Therefore, the plaintiff's first contention is persuasive. A remand for a new decision giving "good reasons" for rejection of Dr. Miles' medical opinions is required.

Despite the foregoing, we cannot conclude that the ALJ's improper analysis of the physical restrictions assigned by Dr. Miles adequately supports a judicial award of benefits. Even if Dr. Miles' opinions were given controlling weight, it is not apparent that they would preclude all types of work in the national economy. For example, an individual with severe physical restrictions but possessing the SVP-7 supervisor skills associated with the plaintiff's past relevant work might be deemed capable of performing some type of gainful activity.

**The Plaintiff's Nonexertional Impairments**

The plaintiff's second numbered contention is that "the ALJ erred in failing to find that Eddie's hearing loss was a severe impairment" (Docket Entry No. 9, p. 7). In addition, the ALJ's decision apparently failed to acknowledge the presence of other "severe" nonexertional impairments that arguably were present. At the second step of the sequential evaluation process, "severity" is a term of art that denotes an impairment having a vocational-significant impact upon an individual's ability to perform any type of work, regardless of age, education, or past work experience. For example, even an extremely slight arthritic condition affecting only one little finger may be a "severe" impairment if the individual is a professional pianist. See discussion of Step #2 of the sequential evaluation process in the Governing Legal Standards section of this report, supra. As indicated in the prior paragraph, the Commissioner might deem the plaintiff capable of performing skilled supervisor work. If that were the case, otherwise insignificant nonexertional limitations, such as hearing loss, lack of a high school education, and faulty memory, may rise to the level of a "severe" impairment. Hence, the plaintiff's second contention is persuasive. In addition, the record reflects that the plaintiff dropped out of school in the ninth grade when he was sixteen years old and did not obtain a GED (AR, p. 363). Furthermore, he takes Oxycontin twice daily for pain relief and testified that "I don't know if it's from the medicine but I know I don't have any memory" (AR, pp. 165, 372, and 381).

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision and further administrative proceedings in which 1) the findings of the treating physician, Dr. Miles, with respect to Listing 1.04A and the plaintiff's residual physical capacities are analyzed with particularity; 2) if the Listing is found not to be satisfied, the sequential evaluation process is advanced to the fifth and final step; 3) "severe" nonexertional impairments are identified if they are found to exist; 4) a hypothetical question is presented to a vocational expert that contemplates all physical and mental restrictions that are found to be present; and 5) such other proceedings are undertaken that the Commissioner deems necessary and appropriate.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court.  Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections.  A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings.  A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001.  Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).